IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEKO FULP, *individually and on* )
*behalf of all others similarly situated,* )
                                    )
                Plaintiff,          )
                                    )
v.                                  )          Civil Action No. 3:20cv53–HEH
                                    )
SYKES, BOURDON, AHERN, &            )
LEVY, PC, *et al.*,                 )
                                    )
                Defendants.         )

## MEMORANDUM OPINION
### (Granting Defendant's Motion to Dismiss)

This matter is before the Court on Sykes, Bourdon, Ahern, & Levy, PC's

("Defendant") Motion to Dismiss for Lack of Jurisdiction, filed on April 8, 2020 (ECF

No. 6). Plaintiff filed her Complaint in this class action lawsuit on January 30, 2020,

alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), specifically 15

U.S.C. §§ 1692e–1692f (Compl., ECF No. 1).[1] The parties have filed memoranda

supporting their respective positions, and the matter is ripe for this Court's review. The

Court will dispense with oral argument because the facts and legal contentions are

adequately presented in the materials before it, and oral argument would not aid in the

decisional process. *See* E.D. Va. Local Civ. R. 7(J). For the reasons that follow, the

Court will grant Defendant's Motion to Dismiss.

---

[1] Plaintiff also named "John Does 1-25" as Defendants in her Complaint; however, Plaintiff has
not perfected service upon Defendants John Does 1-25.

"The legal standard for a facial challenge to subject matter jurisdiction is 'patterned on Rule 12(b)(6),' such that 'the truthfulness of the facts alleged' in the Complaint must be assumed. *Biber v. Pioneer Credit Recovery, Inc.*, 229 F. Supp. 3d 457, 464 (E.D. Va. 2017) (applying Rule 12(b)(6)'s standard to a defendant's challenge to the injury-in-fact component of the standing analysis (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009))). Thus, the Court will apply the standard dictated by Rule 12(b)(6), assuming Plaintiff's well-pleaded allegations to be true, and viewing all facts in the light most favorable to her. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Additionally, the Court notes that Plaintiff attached a letter to her Complaint.[2] (Compl. Ex. A [hereinafter Letter], ECF No. 1-1.) Therefore, the Court will consider the Letter in addressing Defendant's Motion.

On May 16, 2019, Plaintiff received the Letter from Defendant on behalf of Banyan Grove Operator, LLC, d/b/a Banyan Grove Apartments.[3] (Compl. ¶ 26.) The Letter sought to collect from Plaintiff an amount of $3,769.57, and detailed that payment

---

[2] Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007), as well as documents attached to a motion to dismiss, so long as they are integral to or explicitly relied upon in the complaint, and the authenticity of such documents is not disputed. *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

[3] Although Plaintiff does not directly state so, it appears to the Court that Plaintiff has a landlord-tenant relationship with Banyan Grove Apartments. (*See generally* Compl.) As a result, it would logically follow that the alleged underlying debt arises out of transactions in which money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes as is required by the FDCPA. *See* § 1692a(5).

could be accepted by check, money order, cashier's check, cash, or credit or debit card.[4]

(Letter at 2.) It further indicated that, if Plaintiff desired to pay the amount owed by

credit or debit card, such payments "made over the phone [would be] subject to a

convenience fee of $3.00." (Compl. ¶ 27; Letter at 2.) It is this statement regarding the

$3.00 convenience fee—*not* the principal amount of $3,015.66, *nor* the $753.91 in

attorneys' fees—upon which Plaintiff bases her claims in this lawsuit. Defendant now

seeks to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, primarily

challenging Plaintiff's failure to establish standing.[5]

A plaintiff bears the burden of establishing that she has standing for each type of

relief sought. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). To establish

standing, a plaintiff must demonstrate three irreducible constitutional minima: an injury-

in-fact that is concrete and particularized, and actual or imminent, not conjectural or

hypothetical; an injury that is fairly traceable to the challenged action of the defendant;

and that it is likely, as opposed to merely speculative, that the injury will be redressed by

a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The

injury-in-fact requirement is the "first and foremost" of this doctrine's three elements,

and the Supreme Court of the United States has "made it clear time and time again that an

---

[4] The Letter alleges that the principal amount of Plaintiff's debt is $3,015.66, and that the total amount sought by Defendant is $3,769.57, which includes $753.91 in attorneys' fees.

[5] Defendant additionally asserts that, even if this Court may exercise jurisdiction over Plaintiff's claims, she fails to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

injury in fact must be both concrete *and* particularized." *Spokeo, Inc. v. Robins*, 136 S.
Ct. 1540, 1547–48 (2016).

To be concrete, an "injury must be '*de facto*'; that is, it must actually exist." *Id.* at
1548. "Article III standing requires a concrete injury even in the context of a statutory
violation," *id.* at 1549, and, "[a]s injury in fact is a constitutional requirement, 'Congress
cannot erase Article III's standing requirements by statutorily granting the right to sue to
a plaintiff who would not otherwise have standing,'" *Ben-Davies v. Blibaum & Assocs.,
P.A.*, 695 F. App'x 674, 675 (4th Cir. 2017) (unpublished) (quoting *Spokeo*, 136 S. Ct. at
1547–48). Thus, the import of recent precedent prescribes that "Article III standing
requires more than simply a claim of [a] procedural violation of a statute: it requires
pleading a fact-supported allegation of a concrete injury." J. Henry E. Hudson,
Christopher M. Keegan, & P. Thomas DiStanislao, III, *Standing in a Post*-Spokeo
*Environment*, 30 Regent U. L. Rev. 11 (2017); *Spokeo*, 136 S. Ct. at 1549 ("[Plaintiff]
could not . . . allege a bare procedural violation, divorced from any concrete harm, and
satisfy the injury-in-fact requirement of Article III.").

The Supreme Court has acknowledged, however, that there may be circumstances
in which a statutory violation itself may satisfy the concrete injury requirement. Where
the violation creates "the risk of real harm," injury-in-fact may be satisfied, but only if
the threatened injury is "*certainly impending*," as "allegations of *possible* future injury
are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting
*Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Additionally, the Court has also
suggested that an intangible harm will suffice to establish standing where the violation

has a relationship to an injury recognized at common law, or denies a right to access specific information to which the plaintiff is entitled. *Spokeo*, 136 S. Ct. at 1548–49 (stating that, where common law traditionally recognized such a claim, "a plaintiff . . . need not allege any additional harm beyond the one Congress has identified"); *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) ("An 'informational injury' is a type of intangible injury that can constitute an Article III injury in fact." (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998))).

In this case, Plaintiff's Complaint is premised upon the $3.00 convenience fee mentioned in the Letter, which she believes Defendant was unauthorized to include and evinces Defendant's intention to mislead and deceive her into the belief that she falsely owed an additional $3.00, in contravention of §§ 1692e and 1692f of the FDCPA. (Compl. ¶¶ 29–31.) Yet, conspicuously absent from Plaintiff's Complaint is any allegation of actual harm suffered as a result of these alleged violations. As Defendant has raised a facial challenge to Plaintiff's standing, the Court is mindful that it remains bound by the facts as alleged in the Complaint. *See Kerns*, 585 F.3d at 192. Thus, Plaintiff's Complaint must contain sufficient allegations that she suffered a sufficient intangible harm in order to establish standing. This Court finds that it does not.

The Letter plainly states that "Cash and Credit/Debit cards are also accepted in our office. Credit/Debit card payments made over the phone are subject to a convenience fee of $3.00."[6] (Letter at 2.)   Yet, Plaintiff's mere disagreement with the convenience fee

---

[6] To the extent Plaintiff claims that she suffered the risk of confusing the $3.00 convenience fee with the principal amount of her alleged debt, this contention is unpersuasive. Not only is the

5

does not constitute a risk of real harm. Although Plaintiff makes much of this fee, she

was free to complete her payment by check, money order, or cashier's check—none of

which would be subject to the $3.00 convenience fee. (Letter at 2.) Moreover, Plaintiff

fails to allege that she, at any point, intended to pay the $3.00 convenience fee associated

with the credit or debit card payment. Plaintiff cannot now claim that she suffered the

risk of real harm "by inflicting harm on [herself] based on [her] fears of hypothetical

future harm that is not certainly impending." *See Clapper*, 568 U.S. at 416; *see also*

*Hunter v. NHcash.com*, No. 3:17CV348–HEH, 2017 WL 4053769, at *3–4 (E.D. Va.

Sept. 12, 2017) ("[N]othing alleged in the Complaint suggests that Plaintiffs felt

pressured to make payments on the . . . loans or that Plaintiffs made detrimental decisions

regarding their debts as a result of Defendant's actions."). Thus, Plaintiff's claim that

receipt of the Letter alone caused her a risk of real harm is unavailing. (Compl. ¶ 30.)

Plaintiff similarly fails to suggest a "common law analogue" for her alleged

FDCPA injury. *See Dreher*, 856 F.3d at 345; *see also Lyons*, 461 U.S. at 105 (stating

that the burden to establish standing falls to the plaintiff). Canvassing an array of

common law actions, this Court can find no comparable action. *See Brown v. R&B Corp.*

*of Va.*, 267 F. Supp. 3d 691, 699–701 (E.D. Va. 2017) (detailing that, although "most

historic common law made it a crime to obtain goods or money 'by false pretense,' such

prohibition did *not* apply to false statements made to recover 'debt already due, because

---

total amount of the debt initially mentioned in an entirely different paragraph of the Letter from
the statement regarding the convenience fee, but the Letter also specifically reiterates the
principal amount in its subject line. (Letter at 2.)

no injury is done.'" (internal citations omitted)). Thus, this Court is persuaded that the statutory violation evolving from the Letter is "not the type of common law invasion of a right that is sufficient to create the type of concrete injury envisioned by *Spokeo*." *See Coleman v. Charlottesville Bureau of Credits, Inc.*, No. 3:17CV147–HEH, 2017 WL 1381666, at \*6 (E.D. Va. Apr. 17, 2017).[7]

Plaintiff attempts to persuade this Court that she has established standing because other courts have found that the receipt of a collection letter, indicating that a convenience fee will be added if the plaintiff pays the alleged debt by credit card, constitutes a sufficient injury to give rise to Article III standing. *See, e.g., Thomas v. Youderian*, 232 F. Supp. 3d 656, 671 (D.N.J. 2017); *Fuentes v. AR Res., Inc.*, No. 15-7988 (FLW)(LHG), 2017 U.S. Dist. LEXIS 48923, at \*17 (D.N.J. Mar. 31, 2017). While the Court acknowledges a shallow well of arguably countervailing authority, it finds the formidable arsenal of decisions strictly applying the teachings of *Clapper* and *Spokeo* more persuasive. *See Hunter*, 2017 WL 4053769, at \*4 (holding that bare allegations of statutory violations are insufficient to confer standing under the FDCPA); *Coleman*, 2017

---

[7] Plaintiff does not appear to contend that she has suffered an informational injury. However, such a contention would not alter the result in this case as the Supreme Court has appeared to link informational injuries to an historically recognized, preexisting common law right—an argument with which this Court has already disposed. *See Spokeo*, 136 S. Ct. at 1549. Furthermore, the case from which the notion of an informational injury stems far preceded *Spokeo. See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). Although *Spokeo* did not explicitly abrogate *Havens Realty Corp.*, this Court believes that *Spokeo* significantly narrowed the doctrine of standing to exclude from its grasp cases in which plaintiffs allege merely statutory violations without harm. Thus, the Court finds that this avenue would not provide Plaintiff success in this case.

WL 1381666, at *6 (same). *But see Biber*, 229 F. Supp. 3d at 466–67; *Brown*, 267 F. Supp. 3d at 702.

Furthermore, Plaintiff relies on opinions authored by district courts within the Third Circuit. Notably, the United States Court of Appeals for the Third Circuit and the United States Court of Appeals for the Fourth Circuit—the court responsible for the opinions upon which *this* Court must rely—have rendered opposing decisions on the issue of standing in cases with nearly identical facts.[8] *Compare In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 640 (3d Cir. 2017) (finding plaintiffs' mere allegation of a violation of the FCRA sufficient to confer standing), *with Beck v. McDonald*, 848 F.3d 262, 276–77 (4th Cir. 2017) (determining that attenuated possibilities of potential harm were insufficient to confer standing). Thus, this Court finds Plaintiff's invitation to manufacture standing in this case unconvincing.

Therefore, this Court finds that Plaintiff's Complaint fails to sufficiently allege a concrete injury, and thus, her allegations fail to satisfy Article III's standing requirements. This does not mean that Plaintiff could never have standing to bring an

---

[8] The Court believes its decision is further guided by bedrock constitutional restraints. In *Ansley v. Warren*, the Fourth Circuit stated that:

> The concept of standing finds its roots in the idea of separation of powers. By confirming that the legal questions presented to the court are resolved in a concrete factual context rather than in the rarefied atmosphere of a debating society, the doctrine ensures that we act *as judges*, and do not engage in policymaking properly left to elected representatives.

*See* 861 F.3d 512, 517 (4th Cir. 2017) (Wilkinson, J.) (internal quotations and citations omitted). Accordingly, this Court is reminded that its duties are circumscribed, and its decisions are bound by those that have come before it.

action to recover for the FDCPA violations presently alleged; however, she must simply

plead some concrete harm in order to satisfy the injury-in-fact requirement of Article III.

Accordingly, Defendant's Motion to Dismiss will be granted, and Plaintiff's

Complaint will be dismissed without prejudice.[9]

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: August 21, 2020
Richmond, Virginia

---

[9] Because the Court finds that Plaintiff has failed to establish standing, it will not address
Defendant's arguments pursuant to Rule 12(b)(6).